## Richmond.

KIRKHAM v. RUSSELL, AUDITOR OF PETERSBURG.

ALLEY v. SAME.

STEVENS v. SAME.

PORTER v. SAME.

RAINE v. SAME.

JARVIS v. SAME.

EANES v. SAME.

December 19, 1882.

1. MUNICIPAL CORPORATIONS can exercise only such powers as by their charters are granted in terms expressed, or by necessary implication, regard being had to the purpose of the grant. Any doubt arising out of the terms employed must be resolved in favor of the public.

2. IDEM—*Ordinances.*—City ordinances, to be valid, must be reasonable. An unreasonable by-law is void. Where charter expressly grants a power, but prescribes neither the time nor the mode of its exercise, it must be exercised in a mode and at a time deemed *reasonable* by the court.

3. IDEM—*Case at bar.*—The new charter of the city of Petersburg was granted 11th March, 1875. Under it certain officers are elected by the voters—others by the council; which is composed of 24 members, elected by the voters, one-half every other year. In May, 1882, of the 12 whose terms expired 30th June, 1882, the voters re-elected one and replaced eleven with new members. At the council's first meeting under this charter, it elected the officers elective by it, and ordained that similar elections be held on 1st July every two years thereafter. This ordinance was observed until 28th June, 1882 when, 22 members being present, 16, including 11 whose terms expired on the third day thereafter, against the protest of the other 6, repealed that ordinance and elected all the officers that were to be elected by the incoming council on 1st July thereafter, and even a president of and standing committees for the incoming council. The new council coming in 1st July, 1882, ignored these proceedings, organized, and then elected the officers elective by the council. On

petition by the officers elected 28th June, 1882, for a *mandamus* to compel the city auditor to pay their salaries—

HELD:

The power exercised by the council 28th June, 1882, in enacting the ordinance of that date, was *unreasonably* exercised, being in derogation of the rights of the voters of the city, and in contravention of the spirit of the charter—and that ordinance is invalid. And the elections held under that ordinance are void, not only for those reasons, but on the additional ground that the council, on 1st July, 1880, at *its* first meeting, elected all the officers elective by it for the term of two years commencing on that day. Having exercised *its* power of election, *its* power in that respect was at an end.

Petition of William Kirkham, W. E. Alley, W. H. Stevens, B. E. Porter, R. H. Raine, R. F. Jarvis, and —— Eanes, who claim to have been lawfully elected on 28th June, 1882, by the council of the city of Petersburg, to fill certain city offices. They pray for a writ of *mandamus* against F. R. Russell, the auditor of said city, to compel him to pay to them respectively their salaries.

These petitions, heard together, were twice argued, first at Staunton, last at Richmond, where they were decided.

The opinion of the court states the facts.

*Ould & Carrington,* for the petitioners.

*Collier & Budd, G. S. & D. M. Bernard,* and Judge *William J. Robertson,* for the respondent.

LEWIS, J. In these cases, which involve the same questions and have been heard together, the petitioners allege that they are lawfullly elected and qualified officers of the city of Petersburg, and as such are entitled to be paid from its treasury certain sums of money due them as salaries. They severally pray for a writ of *mandamus,* commanding the respondent, whom they allege to be the acting auditor of that city, to draw his warrants in their favor

upon the city treasurer for the sums of money due them respectively.

In his answers to the rules awarded by this court, commanding him to show cause why the writs should not be granted as prayed for, the respondent insists that the same ought not to be granted, and for two reasons: first, because, even if the petitioners are entitled to the sums of money claimed by them, they have another remedy—plain, adequate, and specific—namely, by actions at law in the hustings or circuit court of the city of Petersburg; and, secondly, because the petitioners are not lawfully elected officers of the city of Petersburg, and are not entitled to the salaries to which they lay claim.

To the answers the petitioners each demur. The facts averred therein, and by the demurrers admitted to be true, are substantially these:

By an act of the general assembly, approved on the 11th day of March, 1875, a new charter was granted to the city of Petersburg. Under its provisions, certain of the city officers, including the mayor and others, are elected by the qualified voters of the city, while certain other of its officers are elected by the common council. The common council is a body composed of twenty-four members, or four members from each of the six wards into which the city is divided. Its members are divided into two classes; and biennially, on the fourth Thursday in May, one-half of its members are elected by the qualified voters of their respective wards for the term of four years, commencing on the 1st day of July following their election. Its power to elect officers is conferred by §§ 16 and 18, ch. 3 of the city charter, the last of which provides that the common council may elect a superintendent of water works, a register of the water works, a street commissioner, one clerk of Centre market, one clerk of Old market, one keeper of the powder magazine, a keeper of the hay scales, and a keeper

of the Blandford cemetery; each of whom shall hold his office for the term of two years, unless sooner removed from office; and shall execute such sufficient bonds and receive such compensation as the council may prescribe. Power is also conferred on the council to create and fill other offices when in the judgment of two-thirds of all its members the interests of the city demand it; the term of the incumbents of such offices not to extend beyond the last day of June in the year in which any election of any portion of the members of the council may occur. Under authority conferred by the last clause, many important offices have been created and filled, including the office of city auditor, the fire and police departments and others.

At the first meeting of the council held under the charter—namely, on the 1st day of July, 1876—an election of officers was held, and on the same day, or thereafter, an ordinance was adopted providing for similar elections by the council, thereafter to be held, at its first regular meeting in July of each year in which any portion of its members are elected, or as soon thereafter as practicable. Under this ordinance, such elections have uniformly been held by the council at the time prescribed. It remained unchanged until the 28th day of June last, when a proposition to change it was adopted, and a new ordinance was substituted in its stead. That ordinance prescribed the 28th day of June as the time for such elections by the council, instead of at its first meeting in July.

Prior thereto—namely, on the fourth Thursday in May last—twelve new members of the council had been elected, whose terms were to begin on the 1st day of July following.

At that election, the answers aver the people expressed their will in favor of a decided and sweeping change in their representation in the council. Of the twelve members whose terms were to expire on the 1st day of July, 1882,

one only was re-elected; and of the sixteen members by whose votes, at the meetings of the council on the 28th, 29th, and 30th days of June, 1882, the acts hereinafter mentioned were done, only six were to remain in the council after the 1st day of July.

On the said 28th, 29th, and 30th days of June, meetings of the council were held; at which twenty-two of the members were present. At said meetings, sixteen of the members (including eleven of those whose terms were to expire on the 1st day of July, the third day thereafter,) against the protest of the other six members present, with a view to forestall the action of the new council, which on the 1st day of July, were to succeed to the control and management of the municipal affairs of the city, and with a view to usurp the powers legally belonging to the incoming council, when there was no vacancy in any of the several offices which had been filled by the council at its first meeting in July, 1880, undertook to exercise a second time the power of electing officers, and attempted to elect all the officers of the city that were to be elected by the incoming council for a term of two years, commencing on the 1st day of July; and even undertook to elect a president of and to appoint the standing committees for the incoming council.

The persons so elected, or some of them, are the petitioners in these cases.

On the 1st day of July, the new council met and organized; and treating as null and void the proceedings of the council on the 28th, 29th and 30th days of June, and ignoring them, at once proceeded to choose its president and committees, and to elect all the officers elective by the council, for the term of two years commencing on that day.

The persons so elected, or some of them, having been chosen to fill the same positions to which the petitioners

respectively claim to have been elected for the same terms, the question now to be determined is, whether or not the petitioners were legally elected to, and are entitled to hold, the offices thus in dispute.

The determination of this question involves the construction of the provisions of the charter conferring on the common council authority to elect officers. And in this connection it is to be observed that in the construction of charters of corporations, whether public or private, it is a settled rule of interpretation, established by repeated decisions of the highest courts in the land, that only such powers can be exercised under them as are clearly comprehended within the words of the charter, or derived therefrom by necessary implication, regard being had to the objects of the grant. And any doubt arising out of the terms used by the legislature must be resolved in favor of the public. *Minturn* v. *Larue*, 23 How. 435; *Thomas* v. *City of Richmond*, 12 Wall. 349; *Thomson* v. *Lee County*, 3 Wall. 327; 1 Dillon on Municip. Corporations (3d ed.), § 91.

Equally well settled is the rule which requires a reasonable exercise of an express power when the grant conferring it is silent as to the time and mode of its exercise. In his work on Municipal Corporations, the rule is thus stated by Judge Dillon: "Where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then an ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." 1 Dillon on Munic. Corp. (3d ed.), § 328, and cases cited.

And especially is this so in respect to municipal corporations. For as upon them is conferred a portion of the authority which properly appertains to the sovereign power of the State, the public interests require that they be confined not only to the powers, but to a reasonable exercise

of the powers, which are clearly granted by the terms of their charters.

The time for the election of officers by the people is prescribed by the charter of Petersburg; but the time for the election of officers by the council is not prescribed. That is left to be fixed by the council; its power to do so being derived by implication from the power to elect.

Such being the case, the question arises, whether the council can be judicially interfered with in the exercise of its discretion in that regard; and that depends upon the question whether the ordinance under which the petitioners were elected is *reasonable* or not.

It is essential to the validity of an ordinance that it be reasonable. An unreasonable by-law is void. Bac. Abr. title By-Law; 2 Kyd on Corps. 107; *Dunham* v. *Rochester*, 5 Cowen, 464; 1 Dillon's Munic. Corps. (3d ed.), § 327, and cases there cited.

In England, says Judge Dillon, the subjects upon which by-laws may be made were not usually specified in the king's charter, and it became an established doctrine of the courts that every corporation had the implied or incidental right to pass by-laws; but this power was accompanied with these limitations, namely: that every by-law must be reasonable, not inconsistent with the charter of the corporation, nor with any statute of parliament, nor with the general principles of the common law of the land, particularly those having relation to the liberty of the subject or the rights of private property. In this country the courts have often affirmed the general incidental power of municipal corporations to make ordinances, but have always declared that ordinances passed in virtue of the implied power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the State. And so, as we have seen, when a power is conferred

upon a corporation, and the time and mode of its exercise is not prescribed, a reasonable exercise of the power is required. From the first meeting of the council under the charter of Petersburg, in July, 1876, down to the 28th day of June, 1882, fixing the time for the election of officers by the council at its first meeting in July following the election of any portion of its members, has been deemed a reasonable exercise of the power to prescribe the time for such elections. And in that respect its action has undoubtedly been reasonable and free from objection. It being the duty of the council to elect officers, it is incumbent on it to discharge that duty seasonably and without unnecessary delay. To unduly postpone it would not be a reasonable exercise of the power conferred.

Any ordinance, therefore, unreasonably postponing it would be as clearly void as would be an ordinance expressly forbidden by the terms of the charter itself. And this, as a general proposition, is sustained by all the authorities—ancient and modern. The books abound in instances of ordinances adjudged to be void for unreasonableness; as, for example, because in restraint of trade, or oppressive, or in derogation of the rights of the people, or in contravention of the objects of the corporation or the general law or policy of the State.

Thus, an ordinance of the city of San Francisco, which fixed one rate of license for selling goods within or in transit to that city, and another rate for goods not within the city nor in transit thereto, was pronounced by the supreme court of California, in a recent case, to be void, because in restraint of trade and in contravention of the public policy of that State which encourages free commercial intercourse between the different sections of the State. *Ex parte Frank,* 52 Cal. 606.

So, the supreme court of Tennessee, in a case decided in 1848, declared void an ordinance of the city of Memphis,

which ordered the arrest and punishment of all free ne-
groes who might be found out after ten o'clock at night,
within the limits of the corporation, on the ground that it
was oppressive and unreasonable. *Mayor* v. *Winfield*, 8
Humph. 707.

So in Connecticut it has been held that every one has,
presumptively a common law right to fish in navigable
rivers, and that a by-law of a town restricting the privi-
lege to its own inhabitants is void, because in derogation
of the common rights of the people.

So in a recent case in the hustings court of Richmond,
Judge Christian, of that court, in an able opinion, in which
many authorities are referred to in support of his judg-
ment, pronounced an ordinance of that city to be void, on
the ground that it was unreasonable, which required the
occupant or owner of any building or lot of land fronting
on any sidewalk to remove the snow therefrom within a
certain time. But to draw the line separating a reasonable
and valid ordinance on the one hand, from one unreasona-
ble and invalid on the other, is often attended with great
difficulty. The general principles, however, relating to
the subject are well settled and familiar; the difficulty is
in their practical application—and that must depend upon
the facts of each case as it arises.

We come now to consider the question, whether, under
the circumstances of these cases, the ordinance under
which the petitioners were elected is, or is not, reasonable
and valid.

The question has twice been most elaborately argued
before us; once at the recent term at Staunton, and again
at the present term here; and the interesting and instruc-
tive arguments delivered by counsel on either side, have
been marked by rare learning and ability.

Since the cases were submitted, suddenly, and in the

midst of his usefulness and intellectual vigor, one* who so powerfully participated in their argument, has been cut down by the hand of death. The loss thus sustained by the State, few can so fully realize, and none more deeply deplore, than the members of this court.

Aided by such arguments, and after mature consideration, a majority of the court has reached the conclusion that the adoption of the ordinance in question was not a reasonable exercise of the power conferred upon the council to fix the time for the election of officers; and, consequently, that it, and the elections held under it, are null and void.

As an authority opposed to this conclusion, we are referred to the decision of this court in *Norfolk City* v. *Ellis*, 26 Gratt. 224.

A reference to that case will show that it is widely different from these. There the defendant in error complained of an assessment for the purposes of *taxation* made upon his property in Norfolk under authority of an ordinance of the city council. The ordinance was assailed as *ultra vires* and void. It was decided to be valid. Judge Staples, who delivered the opinion, in which a majority of the members of the court concurred, stated the established doctrine to be that, ordinarily, the courts will not interfere in the exercise by a corporation of the powers conferred upon it in matters of that character. But he added: "I do not mean to say that cases may not occur of such gross oppression and injustice as to require judicial interference; but they are exceptional, and must be decided as they arise upon the particular circumstances attending them, rather than upon any general rule or principle." There is nothing, therefore, decided in that case inconsistent with the views of the majority of the court in this.

So with respect to the case of *Fisher* v. *Harrisburg*, 2

---

* Hon. Robert Ould.

Grant's cases (Pa.), 291, cited and relied on by petitioners. In that case the supreme court of Pennsylvania decided that a municipal corporation has power to make sewers without any special authority given with that view; and that it may, by general rules, regulate the use of them, and the price at which any private person may tap them, and protect them against injury by proper penalties. In briefly delivering the opinion of the court, Lowrie, J., said: "We cannot say that the price at which private individuals may tap these sewers is unreasonable, and we have no right to say it." By which language was doubtless meant that the court had no right arbitrarily to set aside the by-law complained of, in the absence of satisfactory evidence of its unreasonableness. If the power of the courts to set aside such a by-law, under any circumstances, was intended to be denied, the decision is in conflict with the great weight of authority, as we have seen, and cannot be regarded.

The ordinance of the 28th June, 1882, is invalid for two reasons:

First, because it is in derogation of the rights of the qualified voters of the city, and in contravention of the spirit of the charter. It is obvious that the intention—indeed, the paramount object—of the legislature in granting the charter was to provide for the inhabitants of Petersburg not only a local but a representative government; a government intended to rest in large measure upon the consent of the governed; and in the administration of which, therefore, a controlling influence is secured to the qualified voters of the city. To that end, frequent opportunities for the expression of popular sentiment and the election of officers are afforded, and the means provided for promptly carrying into effect the will of the people when it has been formally expressed at the ballot box. Nor is this feature peculiar to the municipal government of Petersburg. It is characteristic of municipal governments in Virginia gen-

erally, and, indeed, in all the States of the American Union. In general there is secured to the people in all of them the largest influence and fullest control consistent with safe and stable government.

Referring to the municipal institutions of this country, an observant and philosophical foreign writer has said of them, that they are to liberty what primary schools are to science; they bring it within the people's reach; they teach men how to use and how to enjoy it. And he further observes that a nation may establish a system of free government, but without the spirit of municipal institutions, it cannot have the spirit of liberty.

Such being the character of the city government of Petersburg, we can find no authority in the charter for the adoption of the ordinance of the 28th June. It gives to an expiring council, or rather to a council three days before the expiration of the terms of one-half of its members, and on the eve of the coming into office of the newly elected members to succeed them, the power not only to fill important offices for a term to last two years after the coming in of such new members, but to choose a president for the new council, and in large measure to shape its policy by selecting its standing committees. Such an ordinance is not only unreasonable; it is doubtless safe to say it is unprecedented. Surely, the legislature, had it intended to confer upon the council the power to adopt it, would have said so clearly and unmistakably. That such power was not conferred appears by the provisions of the charter in respect to the terms and elections of officers generally.

Thus, the terms of all city officers begin on the 1st day of July following the election of officers by the people in May, at which elections one-half of the members of the council are elected, whose terms also begin on the 1st day of July following. Then, is it not a reasonable, if not an irresistible, conclusion that the legislature intended that

the members of the council, then elected, should partici-
pate in the selection of officers elective by it whose terms
of office are to begin on the same day on which the terms
of the officers elected by the people begin? Why should
the legislature require that the terms of the officers elected
by the people shall begin within less than six weeks after
their election; and by the same act give to a council, one-
half of whose members have been elected for more than
two, and the other half for more than four, years before
that time, the power to elect officers whose terms begin at
the same time? It is manifest that such was not the in-
tention of the legislature; and that biennial elections of
one-half of the council are prescribed in order that the
voice of the people, speaking through their newly chosen
councilmen, may be heard as well in the selection of offi-
cers by the council as in other matters entrusted to it af-
fecting their interests and which pertain to the government
of the city. In such cases, to doubt is to deny that the
power claimed for it has been conferred upon the council.

Nor is it an answer to these objections to say that the
members of the council, who have seen years of service
therein, are better qualified by experience to select officers
and standing committees than members newly chosen and
without that experience. Of that matter the voters of the
city are made the judges, who may re-elect or supplant the
old members as they may think best for their interests.
Such reasoning seems not to have commended itself to the
legislature, or doubtless a longer term of service for mem-
bers of the council would have been prescribed.

The unreasonableness of the ordinance in question may
be further illustrated by referring to § 20, ch. 3 of the
charter. That section empowers the common council to
abolish, at any time it may deem it expedient to do so, any
office which it may fill; yet, it provides that no ordinance
abolishing any such office, shall take effect until the expi-

ration of the term of office of its then incumbent. Suppose, then, at the election which occurred in Petersburg on the fourth Thursday in May last, the sentiment of the voters had been expressed—whether in the interest of economy or for any other reason—in favor of the abolition of any, or all of those offices, and that they had elected members of the council to carry out their views in that regard. If the ordinance of the 28th June were sustained, which was subsequently adopted, but before the new members so elected could take their seats in the council, the will of the people would be thwarted, or, at the soonest, could not be carried into execution for two years after the time, when, but for the ordinance, it could have been done. Meanwhile, a set of useless, expensive, or otherwise objectionable officers would be maintained in office at the expense of the city, and against the expressed will of its qualified voters.

In holding the ordinance in question void, we do not mean to decide that the council, having fixed its July meeting following an election as the time for electing officers, may not fix any other time for electing them. What we decide—and all we decide—is, that the time fixed by the ordinance is not a reasonable time, and for that reason it is invalid.

*Secondly.* The elections which were held under the ordinance of the 28th June are void for the further reason, that the council, on the 1st day of July, 1880, at its first meeting, elected all the officers elective by it for the term of two years, commencing on that day. Having done so, its power in that respect was at an end. It having once elected officers, it may choose a second set for the succeeding term to follow those first elected, it is difficult to see why it may not, with the same propriety, choose a third to succeed the second, and so on. It is unjust to the legislature to say, that if it had intended to confer upon the council the extra-

ordinary power to elect the petitioners, under the circumstances attending their election, it would not have said so in language too plain to admit of mistake. Not having done so, the rule of interpretation referred to requires the doubt, if doubt arises, to be resolved against the existence of the power.

It follows that the petitioners are not lawfully elected officers of the city of Petersburg; and the rules awarded in these cases must, therefore, be discharged.

ANDERSON, J.   These causes were heard together, and all rest upon precisely the same grounds.

By an ordinance of the common council of the city of Petersburg, passed April 1st, 1879 (ch. 3, § 1), it was ordained that "The common council shall, at the first regular meeting in July of each year in which any class of them shall be elected, or as soon thereafter as practicable, elect such officers as may be required to be elected by it, unless otherwise provided; and every officer so elected by the council shall hold his office for the term of two years, unless sooner removed for misfeasance," &c.

On the 28th of June, 1882, at a regular meeting of the common council, by adjournment, the said ordinance was amended and re-enacted as follows: "Section 2. The common council shall, on the 28th of June, 1882, and on the same day of each year thereafter in which any class of the common council shall be elected, or as soon thereafter as practicable, elect the following officers," naming the officers, who are relators as above, "and all other officers and employees elective by it," and provides "that every officer so elected by the council shall hold his office for the term of two years, commencing on the first day of July succeeding his election, and until his successor shall be elected and qualified." The charter expressly authorizes and empowers the common council to elect the officers

who are the relators in these causes. (See ch. 3, § 18, p. 16). And they were all elected by the council on the 28th of June, 1882, and regularly qualified in conformity with the requirements of the ordinances, to enter upon the duties of their respective offices, on the 1st of July succeeding their election—the commencement of their terms respectively. And it appears from the record of the proceedings of the council that said ordinance was passed, and the elections made by a recorded vote of sixteen to six, a majority of more than two-thirds.

No time is designated by the charter for the election of those officers; the express grant of the power to elect necessarily therefore includes the power to fix the time of making the election. It is not merely an implication of such power. It is included in the express grant to elect said officers. It is not only a power vested, but a duty enjoined, and therefore incumbent on the council to perform it; and, no time being fixed by the charter, the power of the council to fix it is involved in the express grant and requirement. If there could be any doubt about that, the control and management of the municipal affairs of the city are expressly given to the common council, which is expressly empowered to "make such ordinances, orders, and by-laws relating to the same, as it shall deem proper and necessary." (Ch. 3, § 6). The election of persons to fill the offices required to be done by the council, and determining and fixing the time for their election, is unquestionably "a municipal affair of the city." And the council is expressly authorized by this section of the charter, and invested with plenary power, to make the ordinances, orders, and by-laws relating to the same, which it may deem proper and necessary. Whatever objections, on other grounds, there may be to the ordinance of June, 1882, pursuant to which the petitioners were elected to their respective offices, I think it cannot be reasonably doubted,

that the body which passed the ordinance and elected them, if a legally constituted common council, had express authority under the aforesaid sections of the Petersburg charter, and the power to pass the said ordinance, and to elect the officers pursuant to it.

The power to make ordinances and by-laws involves the power to repeal or amend. "The power of making includes the power to repeal." 1 Dillon on Municipal Corp. (2 ed.), § 249. Can there be a doubt that it was the lawful and the only common council of the city, when it enacted that ordinance, and elected the officers, who are the relators, pursuant thereto?

The common council of the city of Petersburg is, by the charter, ch. 3, § 1, composed of four members from each ward. The city being divided into six wards, the council consists of 24 members, who are elected not by the electors of the whole city, but by those of their respective wards, one-half at the first election for the term of two years, and the other half for the term of four years; and thereafter the successors of those whose terms expire shall be elected on the 4th Thursday in May in the year that the terms of the incumbents expires, for the term of four years. And by ch. 6, § 7, "The term of office of all officers elected by the qualified voters of said city, under and by the terms of this act, shall commence on the 1st day of July succeeding their election." So that the terms of office of the members of the common council, who were elected on the 4th Thursday in May, 1882, did not commence till the 1st day of July, 1882, and the terms of those members whom they were elected to succeed continued up to that time. And the council, consisting of the twelve members whose terms of office expired on the 1st day of July, 1882, and of the twelve members whose terms of office did not expire until two years thereafter, was the lawful common council, and the only common council of the city, up to the 1st of July,

1882, and was invested with all the powers of a common council of the city of Petersburg up to the 1st of July, and up to that time it was invested with the administration and government of the city, so far as it pertained to the common council, under § 2, ch. 1, of the charter, which declares that "the administration and government of the city shall be vested in one principal officer, to be styled the mayor; one board, to be called the common council of the city of Petersburg; and in such other boards and officers as are herein after provided for." The administration and government of the city, so far as it pertains to it, is vested by the charter in the common council; and up to the 1st of July, 1882, the body which constituted the common council as aforesaid was the only common council of the city of Petersburg, and the administration and government of the city, so far as it pertained to a common council, vested in it. And as so constituted it was invested exclusively and completely with the powers of a common council of Petersburg up to the moment when the term of half its members expired and their successors succeeded to their places. Until then, it could do anything that a common council of Petersburg could do. And until then, the newly elected members had no power nor voice in the administration and government of the city. The conclusion is therefore irrefragable that the council, in passing the ordinance of June 28th, 1882, and in electing the relators, respectively, to the offices claimed by them, acted within the scope of its powers, and we think clearly, as we have shown, its express powers.

If so, the authorities speak but one voice, and they are legion, that its acts have the force and effect of the legislative power of the State, and are not subject to revision or reversal by the courts.

Without extending this opinion to an unreasonable length, I can only give extracts from a few of the decisions.

In *State* v. *Clarke,* 54 Mo. p. 36, the supreme court of Missouri said: " With 'the expediency or propriety or wisdom of a legislative enactment, the courts have nothing to do. If a constitutional right is infringed, the courts are open to afford redress. The only question we have to decide is, whether the power existed to make the law." The act of legislation involved was of a city corporation. In *Waldraven* v. *Mayor of Memphis,* 4 Caldwell's Rep. 433–434, it was held by the supreme court of Tennessee, " that the mayor and aldermen of a city, acting under the authority of their charter, have the same power over the subject matter delegated to them, and within the scope of their charter, as a legislative body acting under the authority of the constitution."

In *Mason et als.* v. *City of Shawneetown,* 77 Ill. Rep. p. 537, it was held by the supreme court of Illinois that "an ordinance enacted by the legislative branch of a corporation in pursuance of an act creating the corporation, has the same force and effect of a law passed by the legislature, and cannot be regarded otherwise than a law of and within the incorporation."

*McDermott* v. *The Board of Police for the Metropolitan Police District,* 5 Abbott's Prac. Rep. p. 434. The court held that "The rules and regulations of the board of police, for the trial of a member of the police force, being adopted in conformity with and in pursuance of the power conferred on the board by law, the effect of them is the same as if they had been enacted by the legislature."

In the *Brick Church* v. *Mayor of New York,* 5 Cow. 541, Ch. J. Savage, in delivering the opinion of the court, said "It (the by-law) is exprssly authorized by the legislature, and whether it be so their act, or an act of the local city legislature, makes no difference."

In *Stuyvesant* v. *The Mayor,* 7 Cow. 694, the supreme court of New York said, refering to this case, "We have said in

relation to this very by-law, that it was equivalent in this respect to an act of the legislature."

It was held by the supreme court of Massachusetts (3 Allen, p. 408), that a by-law or ordinance which a corporation is authorized to make, is as binding on its members, and all other persons, as any statute or other law of the Commonwealth—citing 3 Pick. 462; 6 Pick. 187; Angle & Ames on Corp., 7 ed., § 325; Grant on Corp. 77.

In the *Des Moines Gas Co.* v. *The City of Des Moines*, 44 Iowa Rep., it was held, "That within the sphere of their delegated powers, municipal corporations have as absolute control as the general assembly would have, if it never had delegated such powers, and exercised them by its own laws."

In the *City of St. Louis* v. *Boffinger*, 19 Mo., the supreme court of the State said, "The court does not feel at liberty to express its views in relation to the expediency of the measure,"—an ordinance of the city.

In *Wells* v. *The Mayor and Council of Atlanta et al.*, 43 Ga. p. 78, the supreme court of the State said, "Whether the contract be a wise one or not (a contract in relation to the water works of Atlanta), whether the city needs water works, and what plan is most in harmony with the city wants, and with economy, are matters exclusively within the cognizance of the body clothed by the charter with the exercise of the powers of the city. It would be an improper interferance by the courts with the rights of the city for them to undertake to judge of the expediency of this contract."

Citations of authorities might be greatly multiplied in support of the doctrine that the ordinances and acts of a municipal corporation, when within the scope of its authority, and of the powers expressly delegated to it by the legislature, are as binding upon those who are within its jurisdiction, as the acts of the legislature are over the

whole Commonwealth, and are not subject to revision or. reversal by the courts.

I find no Virginia case exactly analagous to the case in hand. But the case of *Norfolk City* v. *Ellis*, 26 Gratt. 224, I think, involved the question now under consideration. That was the case of an assessment by the council of the city of Norfolk upon the lots fronting on Woods street, to pay three-fourths of the costs of paving it. The assessment was made at so much per front foot of the lot; and upon that principle the unimproved lot of Ellis, fronting on that street, which had been assessed before the street was paved as of the fee simple value of $3,000, was assessed as chargeable for the cost of paving the street with $1,165.48 ; $874.11 of which, being three-fourths, Ellis was required to pay. And another unimproved lot, which had been assessed before at the fee simple value of $150, was assessed at $1,000 to meet said expenditure.

The bill was filed by Ellis on behalf of himself and all others similarly situated, to set aside said assessment, as unjust, oppressive, and unconstitutional. A majority of the court sustained the action of the councils. Judge Staples, in his opinion, in which a majority of the court concurred, said : " I do not mean to say that cases may not occur of such gross oppression and injustice. as to require judicial interference ; but they are exceptional, and must be decided, as they arise, upon the peculiar circumstances attending them, rather than upon any general rule or principle." In the Georgia case, *supra*, it was held, only where the action of the council was fraudulent. But Judge Staples, in the next sentence, explains his meaning and clearly defines the principle. He says: " My understanding has always been, that if the mode of assessment was regular and constitutional, if the power to levy the tax exists in that class of cases, the courts are not authorized to interfere merely because they may consider the taxation impo-

litic, or even unjust and oppressive. In such cases, the remedy is in the legislative, and not in the judicial department. Cases without number might be cited in support of this principle." And he cites several. He thus states the principle, that when the power exists, and the proceeding of the council has been regular and constitutional, the courts are not authorized to interfere merely because they may consider the action of the council impolitic, or even unjust and oppressive.

In England it has been held—*Hopkins* v. *Mayor*, 4 Meeson & Welsby's Rep. 640—that the by-law has the same effect within its limits, and with respect to the persons on whom it lawfully operates, as an act of parliament has upon the subjects at large, by Lord Abinger, C. B.

Judge Dillon, in his work on Municipal Corporations, vol. 1, § 308 (3d ed.), says: "Although the proposition that the legislature of a State is alone competent to make laws, is true, yet it is also settled that it is competent for the legislature to delegate to municipal corporations the power to make by-laws and ordinances with appropriate sanctions, which, when authorized, have the force, in favor of the municipality, and against persons bound thereby of laws passed by the legislature of the State." And in § 311, he says with emphasis: "It is well settled that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws." And again he says, in same section: "In analogy to this rule, it is doubtless true, that the courts will not, in general, inquire into the motives of the council in passing ordinances." He thinks that it would not do to apply the analogy to its full extent, but supposes they may be impeached "for fraud," at the instance of persons injured thereby. (The Georgia case, *supra*, holds *only* for fraud). He also holds, § 319, that "when the ordinance is not by express power, but only incidental or implied, it must be

reasonable." And in § 328, he expressly says: " When the legislature in terms confers the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto cannot be impeached as invalid, because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature."

That is the true distinction. When the power of the council is only incidental or implied, the courts may inquire into the reasonableness of its exercise. But when the power is expressly delegated by the legislature, it would be an unwarrantable intrusion by the courts to inquire into the reasonableness or unreasonableness of its being exercised. What have the courts to do with the reasonableness or unreasonableness of the exercise of a power which the legislature has expressly delegated to another body? If the power is given expressly to a city council to pass an ordinance, and to elect certain officers, the grant is to the same body to determine whether or not it would be reasonable to exercise the power, and what right has a court to say the power is given you, but we do not think it was reasonable for you to exercise it?

That the common council which passed the ordinance in question, and pursuant to it elected the officers who are relators in these cases, was a legally constituted common council of the city of Petersburg, and continued to be possessed of all the powers of a lawful common council; upon whom, for the time being, the administration and government of the city was made by the charter in part to devolve, by the act of the legislature under which it existed as a corporation, UNTIL THE 1ST OF JULY, 1882, cannot, and will not be questioned. And we have seen that the ordinance was passed, and the officers elected pursuant to authority expressly delegated to the common council by the act of

the legislature, which constituted the city a municipal corporation. And we have cited decisions of the supreme courts of the states of Missouri, Illinois, New York, Massachusetts, Iowa, Georgia and Virginia, and the opinions of eminent text writers, to the effect that such ordinances have the force and effect of legislative acts, and cannot be revised or reversed by the courts, and that they have in England the force and effect of even an act of parliament. What ground then can there be, and what power and jurisdictions have the courts to set aside and annul the said action of the common council of Petersburg?

It is said in the answer, and relied on in the argument as admitted by the demurrer, that the action of the council in question was with a view to forestall the action of the incoming council, and to usurp the powers which lawfully belonged to it.

Only the *facts* stated in the answer are admitted by the demurrer to be true; and they do not materially differ from the statement in this opinion. But the demurrer can not be taken to admit the propositions of law, or the inferences or conclusions of the answer upon the facts stated, as, for instance, in addition to the above, that the proceedings were "revolutionary," "unreasonable," "illegal, null and void." *They* are the matters which are put in issue by the demurrer, and consequently cannot be taken to be admitted.

The facts stated in the answer as to the proportion of the members of the council which passed the ordinance in question who were opposed to it, and the proportion of those who voted for it who were re-elected, and were members of the incoming council, upon the demurrer, must be taken to be true. But the inference therefrom of the answer that the election by the people showed that there was a sweeping majority of the voters opposed to the policy of the out-going council, cannot be taken to be ad-

mitted by the demurrer. It is not stated in the answer that the former incumbents, who .were left out, were candidates for re-election, or that they were willing to serve longer, and the facts stated in the answer are not sufficient to warrant the above inference. As opposed to such an inference, it was stated by one of the counsel in the treasurer's case, and not contradicted, that the vote of the person who had been elected treasurer at the recent election, and who was a member of the council, was necessary to give a majority to the party opposed to the action of the outgoing council, and that he retained his seat in the council at its reorganization on the 1st of July, and voted and acted with it, before he qualified as treasurer; by reason whereof, by the unanimous decision of this court, his office of treasurer, being incompatible with the office of a member of the council, was vacated.

It is a sufficient answer to this assumption of the respondent that the action in question of the council was with the view to forestall the incoming council, if it were true, to say that the council, in passing the ordinance of June 28, and in electing the relators officers pursuant to it, acted strictly within the scope of its powers and authority. The powers it exercised were expressly delegated to it by the legislature of the State. They had the same power to repeal, alter, or amend the ordinance of April 1st, 1879, that the council then in existence had to pass it. "The power to make includes the power to repeal." 1 Dillon on Muni. Corp. (2d ed.), § 249, *supra*.

The only alteration made was to change the day of election. And it seems to be too plain for argument that, if the council in 1879 had power to fix the time of making the election, the council in June, 1882, had the power to change it. The change was not made merely for that term, but was to be permanent. The recent elections may have impressed upon the minds of the members of the council,

more than ever before, that it was important to the welfare of the city, to the stability of its government, to the protection and security of its various interests, and the welfare of its whole population, that there should be a permanent change of the time of electing the officers, who were to be elected by the council. It was a matter for them to consider, and to determine, under a sense of the highest obligation, their oath of office, whether it would or would not be for the welfare and prosperity of the city, that, as a permanent rule, the election of the officers for the next succeeding term should be made by the outgoing, instead of the incoming council. They being clearly invested with the power, it was a question for the council to determine, as then constituted, upon whom the administration and government of the city, under the charter, as far as it pertained to a common council, devolved, and not upon the voters of the city, nor, in any measure, upon the persons whom they had elected to succeed the members whose office expired on the 1st of July, and who, until then, had no power, nor voice, under the charter, in the administration and government of the city. There is nothing in the charter that requires, either in express terms or by remotest implication, that the officers to be elected for the next succeeding term of two years should be elected by the incoming council. It is a matter left entirely by the charter to the council, to be regulated by it; and the council in 1882 had as much power to change the time of making these elections to the 28th of June as the council in 1879 had to fix the time of making them for the 1st of July. And the fact that that council, by a vote of nearly three to one, deliberately decided in favor of the change, raises a strong presumption that there was good reasons for the change. There is no imputation that the sixteen gentlemen composing more than two-thirds of the council then sitting, acted fraudulently; nor is there a particle of evidence to

show the slightest suspicion of fraud. And really it does not appear that any of its members were actuated by personal motives, or had any personal interest to influence their public acts, or that they were actuated by any motive other than a *bona fide* desire to protect, preserve and promote the real interests of the city. And I cannot see how this court can say that it was an unreasonable exercise of its power.

If we were allowed to go into a consideration of the reasons, I think it might be shown that they strongly preponderate in favor of the action of the council; and that, as a permanent rule, it would be well for the city, in all its interests, and for its whole population, that the change should be made, and that the election of officers by the council should be made near the expiration of two years of the term for which a class has been elected, to commence the 1st of July succeeding its election, than at the commencement of the term for which it is elected. But I deem it unnecessary to state the reasons, as it would extend this opinion to an unreasonable length, and as it was a question for the council to consider and determine, being invested by the charter with the power to pass the ordinance, and not for the courts; and it is a question which it was more competent to decide intelligently and judiciously than the courts. There is nothing, therefore, in the foregoing objections to the action of the council to show that it was an unreasonable exercise of its powers.

But it is objected that the council having exercised the power of electing the officers at the commencement of the two years, had exhausted its powers of election, and could not exercise the power the second time, near the expiration of the two years, by electing officers for the succeeding term of two years—their offices to commence on the 1st of July succeeding their election. There is nothing in the charter so to restrict or limit the exercise of its power of election.

To amend the ordinance of April 1, 1879, so as to change the time of election from 1st of July to 28th of June, necessarily involves the election of the officers twice by the council, under the same organization, or composed of the same members. If the change should be made by the incoming council, it would devolve on them the necessity of electing the officers twice—first, at the beginning of the term of two years; and, secondly, near the end of the term, the officers whose terms were to commence on the 1st of July next succeeding their election. And so *ad infinitum.*

And to hold that the action of the council in June, 1882, was invalid for that cause, the council could at no time, and under no circumstances, alter or repeal the ordinance of April 1, 1879, and fix the time of election prior to the 1st of July, when the office of the newly elected officers is to commence. And yet, as we have seen, the council in 1882 had the same power to alter, amend, or repeal the ordinance of 1879, and to fix the time of election, as the council in the former year to pass the ordinance fixing the time on the 1st of July.

There is some ground for the implication that the charter intended that the offices should commence on the 1st of July succeeding their election; those elected by the council, as well as those elected by the qualified voters, which is expressly required as to them, but not as to the former, except offices created by the council. But there is not the slightest intimation in the charter, or ground for an implication, that the officers should not be elected prior to the 1st of July, the commencement of their offices; or that they should be elected by the council after it has been constituted with the newly elected members. There has not been a section, or sentence, or syllable in the charter referred to in the argument, and we do not think, after a careful perusal of it, there can be, from which such an in-

ference can be drawn; but, on the contrary, the charter in terms and by its spirit, I think, evidently contemplates the election of the officers prior to the commencement of their terms of office. So that the third ground upon which it is contended that the action of the council in question was unreasonable—to-wit: that it was intended by the charter that the council which was constituted, in part, with the newly elected members, should have the election of the officers, who were to serve for the next two years—is without foundation. This ground is rather fanciful than solid. There is nothing in the charter to warrant it, but much to the contrary.

Another ground urged is, that the election on the 28th of June deprived the council that succeeded it of its privilege to elect the officers. The charter only authorizes and requires the officers in question to be elected by the council. They were elected by the council. The charter does not require that they shall be elected by any particular council, or at any specified time. And if it intended that every council, organized with new members, should elect officers, there was nothing in the action of the council of 1882 which deprived the council which succeeded it of that privilege, if it be a privilege. It only in effect postponed the exercise of it from the beginning to the end of the two years. It only changed the time of election by an ordinance from the 1st of July to the 28th of June; the effect of which was to postpone an election of officers by the succeeding council, until near the end of the two years. That was the effect of an ordinance which they had the power to pass. There is nothing in the charter which requires that the officers shall be elected by the incoming council, at the beginning, rather than at the ending of the two years. And how, from the power exercised by the council in June, 1882, can be deduced a resulting power of postponing an election of officers by a subsequent council,

for ten, twenty, or thirty years, or for more than two years, I am unable to perceive.

But it was argued that the power exercised by the council in question, is contrary to the spirit and policy of the charter, by depriving the people of their influence in the administration and government of the city. The charter is the law for the people, as well as for the council and other officers of the city. The spirit and policy of the city corporation cannot be different from what is expressly declared in its charter. The general powers and purposes of a municipal corporation, can only be gathered from the law of its creation—its charter; which alone can direct, control, and regulate its spirit and policy. And the people, or voters, are entitled to that influence, and that only which is reserved to them by the charter.

The charter of Petersburg reserves to the qualified voters of the city the right to elect for stated periods members of the common council, and some other officers, but not all. Many of them are required to be elected by the council, and most of those elected by the people are to be under the control of the common council. But the charter, as we have seen, expressly declares that the *administration and government* of the city shall be vested in the mayor, the common council, and other officers. The administration and government are not vested by the charter in the people, or qualified voters. And the only influence they can have in the administration and government, so far as it pertains to the common council, is at the polls, by the election of one-half the members of the council, at stated periods of two years. They may elect men who may be pledged to carry out their wishes as far as they can consistently with the charter. They are required to be elected on the fourth Thursday in May, their offices to commence on the 1st of July succeeding their election. Until then, *they* can have no part nor voice in the administration or

government of the city, nor the voters by whom they were elected, through them. And until then the council composed in part of the members whose terms of office then expire, can exercise all the powers belonging to the council under the charter, and are invested with the administration and government of the city, as far as it pertains to the council. And its acts are not invalid and void because they do not reflect the wishes of the voters, as supposed to be expressed in the recent elections. With more reason it might be said that the acts of the present congress, up to the 4th of March, which do not reflect the will of the people, as expressed in the recent elections, would be null and void. For the present congress is not more unquestionably invested with the constitutional powers of a congress of the United States up to the 4th of March next, than the common council of the city of Petersburg was invested with all the powers of a lawful common council of the city up to the 1st of July last. I say with more reason; because the lower house of congress is a representative body, whilst the council cannot be said strictly to be a representative body, at least the voice of the voters, as expressed at the polls, can have expression in the council through the members elected only after they were invested with the office and entitled to a voice in the council under the charter; which was not before the 1st of July succeeding their election. Until then, the council, composed in part of the members whose terms of office expired on the 1st of July, was the lawful common council of the city, to every intent and effect, that the present congress is the lawful congress of the United States up to the 4th of March next, and may enact laws which are valid and binding, although they do not reflect the will of the people, as expressed in the recent elections.

But really it does not appear that the qualified voters of Petersburg, in the election on the fourth Thursday in May,

expressed any opinion which was adverse to the action of the council on the 28th of June following. And the action of the council being within the scope of its expressed powers, the attempt on the part of the newly elected members to treat as null and void what had been lawfully done, and to exercise powers which lawfully belonged to their predecessors, and which had been executed by them, was an assumption of powers which had not been vested in them by the charter, and their acts were illegal, null and void. And so far as usurpation is chargeable, they are liable to it, rather than their predecessors.

Upon the whole, I conclude that the ordinance of June 28th, 1882, and the election of the relators as officers in pursuance of it, was within the express powers delegated by the legislature to the common council, and that nothing has been adduced to show that the powers were unreasonably exercised by the council in these instances. The question as to the legality of the appointment of standing committees and the president of the incoming council or other officers, I have not considered. Their cases may or may not rest upon the same grounds. But they are not before the court, and I think it would be improper for the court to express an opinion with regard to them.

I am of opinion, for the forgoing reasons, that the relators are legally invested with the offices and entitled to their salaries; and as by an ordinance of the city they can only recover upon the warrant of the auditor upon the treasurer, which he having refused to give them, their only only adequate and specific remedy is by *mandamus*. I am of opinion therefore that the rule must be made absolute in each of these cases, and that a peremptory *mandamus* be issued.

Since the argument of these causes, which were argued with learning and ability on both sides, the voice of the illustrious counsel who closed the argument for the plain-

tiffs has been silenced in death. The court must ever remember that splendid effort with admiration, because of its unsurpassed ability, and with *sadness*, because it was so soon followed by the death of the great advocate. The principles which should, as I conceive, control in the decision of these causes, were presented by that learned lawyer with a clearness and a power which bore the impress of truth. His great argument has not been answered to my satisfaction, and I do not think it can be. It was to my mind the absolute demonstration of the grounds upon which I have based the decision of these causes.

STAPLES and BURKS, J's, concurred with *Lewis*, J.

CHRISTIAN, J. concurred with *Anderson*, J.

RULES DISCHARGED.