## Ex Parte Robert W. Sims.

Municipal Law—Taxing Privileges—Making Two Taxable Privileges out of one—Liquor License—Authority to Impose Taxes Construed Strictly—Doubts, in Construction of Delegated Municipal Powers, Resolved Against Municipality.

1. The municipality of Jacksonville has no power, either by special charter or by any general law, to segregate the several elements of right that accrue to its citizens under *one taxable privilege*, as recognized, defined and declared by the general revenue laws of the State, and to impose, by ordinance, a license tax upon such segregated element of the one privilege as a *separate* and *distinct privilege* of its own creation.

2. The general revenue laws of the State, in imposing license taxes upon dealers in liquors, group the various intoxicants, therein designated as spirituous, vinous and malt liquors, into one general class of merchandise, and provide that the dealer in any one or all of such several intoxicants, shall be subject to the one license tax therein imposed, and declare in express terms that dealers paying the same and receiving a license therefor shall be authorized to sell *spirituous vinous or malt liquors*, or *any* such liquors. The city of Jacksonville, under the special authority of its charter to "license and tax privileges," and under the power conferred upon municipalities generally by the general revenue laws of the State, to "impose

taxes on any business, profession or occupation not mentioned," in said general revenue acts, has no authority to enact an ordinance that imposes one license tax that, when paid gives to the licensee the right to sell *spirituous* and *vinous* liquors, either at *wholesale or retail*, and *malt* liquors at *retail only*, and that imposes upon the *wholesale* dealer in *malt* liquor alone another separate and distinct license tax. The licensed liquor dealer, whether at wholesale or retail, has the right, as elements of a single taxable privilege, to deal in, at wholesale or retail, as the case may be, *all three* of the general classes of liquors known as spirituous, vinous and malt, and such an ordinance as the one mentioned is unauthorized and void wherein it undertakes to *except wholesale* dealers in *malt* liquors from the license it grants to *wholesale* dealers in *spirituous* and *vinous* liquors, and wherein it undertakes to impose a separate license tax upon such wholesale dealers in *malt* liquors alone.

3.　Statutes conferring authority to impose taxes must be construed strictly, and delegated corporate powers to municipalities, particularly grants of power that are out of the usual range, and that may result in public burdens, or which, in their exercise touch the right to liberty or property, or any common law right of the citizen, must likewise be strictly construed; and when in such construction there is any ambiguity or doubt as to the extent of the power, it is to be determined in favor of the State or general public, and against the State's grantee.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*D. C. Campbell*, for Plaintiff in Error.

Authority to levy taxes upon privileges does not authorize the city to create new privileges for the purpose of taxing them. L. R. A. Vol. 30, page 425, citing Nashville vs. Althrope, 5th Coldw. 554.

The tax must be so as to make it oppressive on a

particular class.   Columbia vs. Beasley, 1 Hamp. 232; 34 Am. Dec. 646.

The tax must be reasonable and not oppressive or in restraint of trade.   Ex parte Frank, 52 Cal. 606; 28 Am. Rep. 642.   Bloomington vs. Wahl, 46 Ills. 489.

Duty of the court to decide what is unreasonable and oppressive.   Vansant vs. Harlem Stage Co., 59 Md. 350.   34 L. R. A. page 104.   Cooley's Cons. Lim., 200 & authorities.

A municipal ordinance which conflicts with the State law upon the same subject is void. 13 L. R. A. 185, citing New York vs. Nichols, 4th Hill, 209. Thompson vs. Mt. Vernon, 11 Ohio state, 688. Adams vs. Albany, 29th Ga. 56. Sill vs. Corning, 15 N. Y. 297. Cin vs. Gwynne, 10 O. 190. Wood vs. Brooklyn, 14 Barb. 425.   Markle vs. Akron, 14 O. 496.

Municipal bylaws must be in harmony with the general laws of the State and with the provisions of the charter.   Whenever they come in conflict with either, the bylaws must give way. Cooley's Con. Lim. 3rd Ed. page 198, sec. 199, and authorities there cited.

The license fees for those who follow certain employments when imposed for revenue, are taxes.   Cooley's Con. Lim. 496, sec. 497, 3rd Ed.

Equality of rights, privileges and capacities are fundamental maxims of government.   3rd Ed. Cooley's Con. Lim. 393, sec. 394.

To constitute a privilege the license must confer authority to do something which without the license would be void.   Cooley on Taxation, 2nd Ed. page 596.

A tax of any kind must be equal and affect all alike of the same class.   Cooley on Taxation, 2nd Ed. p. 69.

The following of one of the ordinary employments of life is not to be regarded as a privilege unless express-

Ex Parte R.W. Simms.—Opinion of Court.

ly made so by statute.   Cooley on Taxation, 2nd Ed. p. 571.

From these authorities we collect the following propositions:

Under the rule requiring a strict construction of the statutes delegating taxing power, a municipality can only exercise the powers expressly delegated, and such powers as are necessary to carry out those expressly delegated.   Cooley's Con. Lim., p. 231.

Therefore, we contend that defining wholesale dealers in beer, was not expressly delegated to this city, nor is it necessary to carry out any power which is expressly delegated.

A municipal ordinance which carves out of a privilege defined, licensed and taxed by the general laws of the State, two privileges, separately defining and licensing each is inconsistent with the general laws of the State, and not in harmony therewith, and is ipso facto void.

We contend that a new municipality can not impose such a tax on a wholesale dealer, which will prevent his coming in lawful competition with foreign wholesale dealers, whose drummers or agents can neither be licensed nor taxed.   Such an ordinance, we contend is unjust, unreasonable and in direct contravention of that part of our constitution and laws, which says:   "Private property shall not be taken for public use without just compensation."

*J. M. Barrs*, for Defendant in Error.

TAYLOR, C. J.:

On September 27th, 1898, the city council of the city of Jacksonville adopted an ordinance entitled: "An ordinance providng for and regulating the registration of all persons, firms and corporations engaged in a busi-

ness, profession or occupation in the city of Jacksonville, fixing the license taxes for the year October 1, 1898, to October 1, 1899, and regulating the doing of business under such licenses." Such ordinance, among other things, provided as follows:

"Sec. 2. That from and after the first day of October, 1898, and until the first of October, 1899, no person shall engage in or manage the business, profession or occupation or occupations hereinafter mentioned and required to be licensed by the city without first having paid the amount of license tax required therefor to the city treasurer for the use of the city, and obtained a license therefor. The license shall be made out by the recorder on production of the treasurer's receipt for the amount, which receipt shall be countersigned by the comptroller."

"Sec. 4. No person, firm, corporation or association shall engage in or manage any business, profession or occupation, in this section mentioned, without first obtaining from the city a license therefor, and the assessments of such taxes are hereby affixed, as follows: Liquors, dealers in spirituous, vinous or malt liquors, other than wholesale dealers in beer, for each place of business $400. Wholesale dealers in beer, including brewers, brewer's agents, all persons storing beer in the city for delivery, and all dealers selling beer by the keg, quarter-keg or cask to retail dealers, shall pay for each place of business or agency, a special license tax of $1,-000. No license other than the special license for wholesale dealers in beer shall cover the selling of beer by the keg, quarter-keg or cask to retail dealers."

"Sec. 6. That any person violating any provision of this ordinance shall, upon conviction, be punished by fine not exceeding $500, or imprisonment not exceeding ninety days."

For an alleged violation of that feature of this or-

dinance that requires the payment of a special license tax of $1,000, by any person selling *"beer"* at *wholesale*, the plaintiff in error was tried and convicted by the judge of the municipal court of said city, and sentenced to pay a fine of $500, or stand committed to the city jail, for the full term of ninety days.

On the 18th day of November, 1898, after such conviction and sentence, the plaintiff in error filed his petition for a writ of *habeas corpus* in the Circuit Court of Duval county, alleging therein that he was a resident of said city of Jacksonville, Fla., and engaged in business as a dealer in spirituous, vinous and malt liquors; that he has three places of business within the corporate limits of the municipality of Jacksonville, located about the central business part of the city, for all of which places he has duly obtained a permit from the Board of County Commissioners of Duval county, Florida, paid the State license tax of $1,500, paid the county license tax of $750, and the city license of $1,200, securing the State, county and city license for each place of business; that in one of said places of business he stores and sells to retail dealers beer in kegs, half-kegs and casks, for which place of business the said municipality demands an additional license tax of $1,000, claiming that the license that he had already paid for and secured, does not permit him to sell to dealers in beer in kegs, half-kegs and casks, and that in order to sell beer in said quantities to dealers he must pay an additional license tax of $1,000 and secure an additional license. The said petition then, alleges the petitioner's neglect and refusal to pay said additional special license tax of $1,000, his arrest, conviction and sentence by the city authorities under the ordinance above quoted, and that he will be kept in custody and deprived of his liberty under such sentence; that the beer that he so sells at one of his said places of business is a malt liquor, is the least intoxicating of any li-

quors, and is the same as he has always sold, and in the
same quantities, under his State and county licenses and
under his municipal license, all of which he has already
paid and secured, except the license for which a tax of
$1,000, has been demanded as aforesaid; that the said
provision of said ordinance is excessive and unreason-
able; that the said city has exceeded the bounds of the
law in its adoption and enforcement, and that the same
is absolutely void, and that he is not liable for said spe-
cial license tax of $1,000, and that his detention in cus-
tody for said alleged violation of said ordinance is un-
lawful.    Said petition prayed for the writ of *habeas
corpus* and that petitioner might be discharged from cus-
tody.

The Circuit Judge after argument by counsel for
the petitioner and the municipality denied the prayer
of the petition, and this decision the petitioner seeks a
reversal of by writ of error from this court.

The municipality of Jacksonville seeks to justify and
uphold the ordinance in question upon the following
provisions of law:

(1) The following provision in section 9 of Chapter
4115, approved June 2nd, 1893, the same being a gener-
al State law for the assessment and collection of revenue,
*viz*:  "Counties and incorporated cities and towns may
impose such further taxes of the same kind upon the
same subjects as they may deem proper, when the busi-
ness, profession or occupation shall be engaged in with-
in such county, city or town.  * * *  But such city,
town or county may impose taxes on any business, pro-
fession or occupation not mentioned in this section,
when engaged in or managed within such city, town or
county."  The same provisions of law being re-enacted
in the same language in section 9 of the subsequent

general revenue act, Chapter 4322, approved June 1st, 1895.

(2) The following proviso from section 57 of said Chapter 4115, *viz*: "Nothing in this act shall be construed as in any way abridging or limiting powers to assess, levy or collect taxes, licenses or assessments which have been or may be granted to any municipal corporation by special act or charter act, or as limiting such municipal corporations in the method of assessing, levying or collecting the same to the methods established by this act." The same provision being re-enacted in the same language in section 56 of the subsequent general revenue act, Chapter 4322, approved June 1st, 1895.

(3) The following provision in section 1 of Chapter 4300, approved June 2nd, 1893, the same being a supplementary act to a former act establishing and providing for the government of the city of Jacksonville, *viz*: "Privileges may be licensed and taxed, and the amounts of such taxes shall be fixed by city ordinance."

It is claimed that this last quoted provision in the supplement to the charter act of the city, construed in connection with the other provisions quoted from general revenue acts, gives to the city full power to pass the ordinance in question.

The real inquiry, upon whose solution the ordinance must stand or fail, is: Can the city of Jacksonville by ordinance, under the delegated general power to tax privileges, segregate the several elements of right that accrue to the citizen under · *one taxable privilege*, as recognized, defined and declared by the general statute law of the State, and tax each of such *elements* as a *separate* and *distinct* privilege of its own creation? All of the general revenue acts, since and including that passed in 1887, in making provision for the licensing and taxing of dealers in liquors, group the various intoxicants, designated therein as spirituous, vinous and

malt liquors, into one general class of merchandise, and declare that the dealer in any one or all of such several intoxicants shall be subject to the one license tax therein imposed upon the privilege known as "dealers in spirituous, vinous or malt liquors," and all of such general statutes declare in express terms that "dealers paying the same and receiving a license therefor shall be authorized to sell *spirituous, vinous or malt* liquors, or any such liquors;" thus declaring that the one licensed *privilege* to deal in liquors or intoxicants generally shall carry with it to the licensee the right, *as elements of such single privilege,* to deal in either one or all combined of the three general classes of intoxicants generally known as spirituous, vinous and malt liquors, each of the three general classes embracing a long list of intoxicants that, while severally distinguishable from each other by their constituent elements, as well as by name, all fall within one or the other of said three general classes, the right to deal in which constitutes but a *single taxable privilege.*

We are not now called upon to determine the extent of the city's power to fix the *amount* of licenses, or to create, classify or graduate licenses upon those occupations not specifically taxed by the State, for the privilege here sought to be taxed is one created and taxed by the State, and in City of Jacksonville v. Ledwith, 26 Fla. 163, 7 South. Rep. 863, it was held that under the city's Charter act, as amended in 1889, the word "privileges" meant those occupations and business of the same kind as those specially mentioned in the Charter and that are taxable by law for State purposes, and that the city had no power to select the subjects of occupational taxes for raising revenue, but was limited to the occupations named in its Charter act, or the revenue laws of the State. There has been no sub-

sequent amendment to the city's Charter that can change this construction, as applied to *privileges taxed by the State.* The city claims that it has the power to classify, and graduate the tax to be paid by its licensees of privileges taxed by the State, and that this ordinance does no more than that. Assuming, but not deciding, that the power exists as claimed, we are of opinion that this ordinance does not classify and graduate the *applicants* for the privilege, but that it divides one privilege into two, and discriminates between vendors of articles necessarily belonging to the one privilege by requiring a separate license tax to sell that special article.

The effect of the city ordinance under discussion, when it imposes a license tax of $400 upon dealers in "spirituous, vinous and malt liquors, *other than wholesale dealers in beer,*" without making any distinction between the *wholesale* and *retail dealer* in the two classes known as "spirituous and vinous" liquors, is to permit the sale either at *wholesale* or *retail* of the *two* classes known as *spirituous* and *vinous,* and the *retailing* (only) of the third class known as *malt liquor* or *beer,* for the one tax of $400, while it singles out the dealer in *"beer"* alone and imposes upon him a separate and special tax of $1,000 when he sells that particular commodity in *wholesale quantities,* and this under a delegated general power to "license and tax *privileges,*" and to "impose such further taxes of the same kind upon the same subjects" as the State by her general revenue laws have imposed license taxes upon, and in the face of the general State law that declares in effect that the *licensed privilege* to deal in liquors shall carry with it to the licensee the "authority to sell spirituous, vinous and malt liquors or any such liquors." When, as in this ordinance, the city undertakes to curtail the *privilege* by constructing out of its constituent elements two separate taxable priv-

ileges, and imposes one tax to cover the *wholesaling* and *retailing* of *spirituous* and *vinous* liquors and the *retailing* of beer, and another special and independent tax for the *wholesaling of beer alone*, it has transcended the authority delegated to it, and the provisions of such ordinance imposing such independent special tax upon the one element of the privilege are unauthorized and void, being inconsistent with and in conflict with the general provisions of law, and not authorized by any charter act. The provisions of said ordinance excepting wholesale dealers in beer from the general license to sell spirituous, vinous and malt liquors, and imposing a separate tax upon wholesale dealers in beer, are therefore void.

The general rule is that statutes conferring authority to impose taxes must be construed strictly. Moseley, Governor, &c., v. Tift, 4 Fla. 402. Another general rule universally recognized is that delegated corporate powers to municipalities, particularly grants of power that are out of the usual range and that may result in public burdens, or which, in their exercise touch the right to liberty or property, or any common law right of the citizen, must be strictly construed, and when in such construction there is any ambiguity or doubt as to the extent of the power it is to be determined in favor of the State or general public, and against the State's grantee. 1 Dillon's Mun. Corp., §§ 89—91; Ex parte Mayor of Florence *in re.* Jones, 78 Ala. 419; City of Canton v. Nist, 9 Ohio St. 439; Kniper v. City of Louisville, 7 Bush, (Ky.) 599; City of Brenham v. Brenham Water Co., 67 Texas, 542; Hanger v. City of Des Moines, 52 Iowa, 193, S. C. 35 Am. Rep. 266; City of Corvallis v. Carlile, 10 Oregon, 139; Minturn v. Larue, 23 How. (U. S.) 435; Williams v. Davidson, 43 Texas, 1; Kirkham v. Russell, 76 Va. 956.

Two cases analogous in facts to the one under consideration, and in which the attempted exercise of the

taxing power were declared to be void, are Hotelling v. City of Chicago, 66 Ill. App. 289; Vosse v. City of Memphis, 9 Lea (Tenn.) 294.

The judgment of the Circuit Court under review is reversed, with directions to grant the writ as prayed, and for such further proceedings as may be consistent with law and this opinion.