# Richmond.

MUSCOE v. COMMONWEALTH.

JANUARY 9th, 1890.

| 86 | 443 |
| 86 | 473 |
| 87 | 464 |
| 87 | 465 |
| 86 | 443 |
| 107 | 850 |

1. ARRESTS—*Constables—Police officers—Municipal ordinances.*—A constable may, *virtute officii*, without warrant, arrest for felony, or upon reasonable suspicion of felony, or for misdemeanors committed in his presence, and take accused before a magistrate. A police officer cannot be authorized by municipal ordinances to do more.

2. IDEM—*Vagrants.*—Peace officers may also, without warrant, arrest vagrants and drunken and disorderly persons. and detain them for action by the proper police magistrates.

3. RIGHT TO RESIST ARREST—*Homicide.*—A person is entitled to resist an *illegal* arrest, and if in doing so he kills the arrester, he is guilty only of manslaughter, unless the circumstances show malice, in which case he is guilty of murder.

4. CRIMINAL PROCEEDINGS—*Instructions.*—At trial for killing police officer attempting to arrest, without warrant, accused for a misdemeanor committed in officer's absence, an instruction to the effect that a police officer has a right to arrest a person without warrant, in pursuance of legal ordinances of the city of whose police force he is a member, empowering him to make such arrest in some specified case; and an instruction that the jury must decide from the evidence whether the attempted arrest is unlawful or not. HELD: Erroneous.

5. IDEM—*New trial.*—The accused is entitled to a full and correct statement by the court of the law applicable to the evidence in his case, and any misdirection by the court in point of law, on matters material to the issue, is ground for a new trial. *Honesty's case,* 81 Va., 283.

Error to judgment of corporation court of city of Charlottesville, whereby the prisoner, William Muscoe, was sentenced to be hanged for the murder of G. T. Seal on the 31st day of December, 1888. The deceased was a policeman of the said

city, and was in the act of arresting the prisoner without a warrant for a misdemeanor, not committed in his presence, when the prisoner shot him with a pistol, which caused his death a few minutes afterwards. Upon firing the fatal shot the prisoner fled, and was apprehended the following day near Barboursville, in Orange county, as he was making his way northward on the Midland railway.

At the trial there was evidence for the commonwealth tending to show that the prisoner had been in the city of Charlottesville about two weeks immediately preceding the homicide, and that he was regarded as a suspicious character. He was reported to the mayor of the city as a vagrant and a gambler, and as habitually carrying concealed weapons, and the mayor verbally ordered the police to arrest him. He was also suspected of stealing a pair of cuff-buttons, a few days before the homicide, though no warrant for his arrest was issued.

The deceased met the prisoner on the street about dark, the evening of the homicide, and stopped him in the presence of the witness, Fry, who testified that the deceased asked him (the witness) if the prisoner was the man who took the cuff-buttons. The witness looked the prisoner in the face and answered that he was. This the prisoner denied, saying he had only come to the city that day. To which the witness replied, "You have been here two or three weeks." He (the prisoner) then started on his way, when the deceased ordered him to stop, and to go with him to "see about the matter," at the same time taking hold of him by the coat. The prisoner, however, refused to go, and jerked back. Then the deceased took out his "nippers" (handcuffs); whereupon the prisoner drew a pistol and fired, inflicting upon the deceased a mortal wound.

The following ordinances of the city of Charlottesville were also produced and proved:

"6. Every policeman shall endeavor to preserve the peace of the town, and to prevent the commission of offenses.

When any offense is committed in the town, he shall earnestly endeavor to detect and arrest the offender; and he shall strive to enforce every ordinance prescribing any fine or punishment.

"7. All vagrants, or persons without visible means of support, found within the limits of the town, shall at once be arrested by the police, and, upon conviction of said offense, shall be punished as provided by law."

After the evidence had been closed, the court gave a number of instructions to the jury, of which the third and fourth were as follows:

"3. That a police officer has no right to arrest a person without a warrant, unless it be for an offense committed in his presence, or where he has cause to suspect a felony has been committed, *or in pursuance of legal ordinances of the city* of whose police force he is a member, empowering him to make such an arrest in some specified case.

"4. That a police officer acting beyond the scope of his authority in making an arrest, is a trespasser, and a person is authorized to resist an unlawful arrest, whether the attempt be made by a police officer or a private citizen; but *the jury must decide from the evidence whether the attempted arrest is unlawful or not.*"

The jury returned a verdict of guilty of murder in the first degree; whereupon the prisoner moved for a new trial, on the ground that the verdict was contrary to the evidence. But the court overruled the motion, and sentenced him to be hanged. He thereupon applied for a writ of error and *supersedeas*, which was allowed, the principal assignments of error in the petition for the writ being that the instructions above mentioned were erroneous, and that the verdict was not warranted by the evidence.

*James H. Hayes*, for the plaintiff in error.

*R. A. Ayers, Attorney-General*, for the commonwealth.

LEWIS, P., delivered the opinion of the court.

We are of opinion that by its third and fourth instructions the corporation court misdirected the jury, and that for this error the judgment must be reversed, and a new trial awarded·

The third instruction is erroneous, because there was no " *legal* ordinance of the city " empowering the deceased to arrest the prisoner without a warrant for a misdemeanor not committed in his view, and the instruction was, therefore, calculated to mislead and confuse the jury. The seventh ordinance, relating to vagrants, may· be laid out of view, as the charge upon which the deceased arrested the prisoner was not vagrancy but petit larceny.

It is contended, however, that the sixth ordinance applies to the case, and authorized the arrest. But we do not think so. The ordinance does, indeed, provide on its face that every policeman, when any offence is committed in the town, shall endeavor to detect and arrest the offender; but if this was intended to confer upon the police force of the city greater authority with regard to arrests than constables possess, the ordinance is ineffectual for any such purpose; for, to that extent, it is not warranted by the charter of the city, or by any statute, and is in contravention of the general law of the state, and therefore void.

An ordinance, to be valid, must be reasonable; it must not be oppressive, and, unless plainly authorized by the legislature, it must not be inconsistent with the general principles of the common law, particularly those having relation to the liberty of the people or the rights of private property. It is an established principle that a municipal corporation, deriving its powers, as it does, from legislative grant, can exercise no power not expressly, or by fair implication, conferred upon it, and hence, as the authorities uniformly hold, any doubt arising out of the terms used by the legislature must be resolved in favor of the public. *Thompson* v. *Lee county*, 3

Wall., 327; *Kirkham* v. *Russell*, 76 Va., 956; 1 Dill. Mun. Corp. (3d ed.), sec. 91, and cases cited.

Indeed, the legislature has expressly enacted that where the council or authorities of any city or town are authorized to make ordinances, the same must not be inconsistent with the constitution and laws of the United States or of this state. Code, 1887, sec. 5, subd. 15.

The provisions of section 1038 of the Code, which, in general terms, authorize the councils of cities and towns to make ordinances, to appoint officers, and to define their powers and duties, are to be construed in the light of these principles; and so construing them, we must hold that the police force of Charlottesville have no greater authority in apprehending persons charged with crime than the general laws of the state confer upon constables. Section 1034 of the Code declares specifically that the powers and duties of town sergeants, within their respective jurisdictions, shall be the same as those of constables, and if by subsequent sections the legislature had intended to authorize city councils to confer upon police officers greater powers in respect of arrests, the intention would doubtless have been expressed in clear and unmistakable terms.

By the general laws of the state, which upon this subject, are, for the most part, the common law, a constable may, *virtute officii*, without warrant, arrest for felony, or upon reasonable suspicion of felony, and for misdemeanors committed in his presence, and take the offender before a magistrate to be dealt with according to law. Peace officers may also, without warrant, enforce the ordinary laws of police by the arrest of vagrants, and drunken and disorderly persons, and detain them for the action of the proper police magistrates. But, in general, in cases of misdemeanor, a constable or other peace officer cannot, any more than a private person, justify the arrest of the offender without a warrant, when the offence was not committed in his presence. 2 Hawk, P. C.,

ch. 13; 1 Chit. Crim. Law, 20; 1 Bish. Crim. Proc. (3d ed.), sec. 181; 7 Am. and Eng. Ency. of L., p. 675; 1 Id., p. 734; 1 Dill. Mun. Corp. (3d ed.), sec. 210, and cases cited.

Indeed, not only must there be a warrant in the class of cases last mentioned, but, to justify the arrest, the officer must have the warrant with him at the time. *Gilliard* v. *Laxton*, 2 B. and S., 363 (110 Eng. C. L., 363); *Regina* v. *Chapman*, 12 Cox, C. C., 4. The provisions of the Code authorizing the county courts of the state to appoint *a special* police for their respective counties, and defining the powers and duties of such special police, have no bearing on the present case. Code, secs. 3922 and 3927.

It is clear, therefore, that the latter part of the third instruction is, as we have said, misleading, and ought not to have been given.

The objection to the fourth instruction is that it leaves it entirely to the jury to say whether the arrest of the prisoner by the deceased was legal or not; whereas the question, what is a legal arrest? is a mixed one of law and fact, and must therefore be determined by the jury upon the facts of the particular case, under suitable instructions from the court as to the law. *Davis* v. *Russell*, 5 Bing., 354 (15 Eng. C. L., 463). The court ought, therefore, to have explained to the jury what constitutes a legal arrest, and then have left it to them to say whether, upon the evidence before them, the arrest in question was legal or not. As it was, they were left without any positive rule to guide them to a correct conclusion.

It is obvious that the question whether the arrest was legal or not, is a vitally important one in the case. If the arrest was legal, the prisoner had no right to resist it; if it was illegal, he had. A person undoubtedly has a right to resist an illegal arrest; and if in so doing he kills the person who undertakes to arrest him, he is guilty of manslaughter only, unless the circumstances show malice, in which case he is guilty of murder—for the law excuses the act only to the extent that it

is presumed the accused acted not with malice, but from the excitement of the moment. 2 Bish. Crim. Law (7th ed.), secs. 699 and 652; *Briggs* v. *Commonwealth*, 82 Va., 554; *Regina* v. *Chapman*, 12 Cox C. C., 4; *Roberts* v. *State*, 14 Mo., 138; S. C. 55 Am. Dec., 97; *Rafferty* v. *People*, 72 Ill. 37.

In the present case it is not pretended that there was any other legal authority for the arrest of the prisoner by the deceased on the charge of petit larceny without a warrant than the sixth ordinance above mentioned, and it is certain the verbal order of the mayor of the city for his arrest conferred no such authority. A justice of the peace, or a mayor of a city or town having similar powers, may himself apprehend or cause to be apprehended, by word only, any person committing a felony or breach of the peace in his presence; but this power extends no further. In all other cases he must issue his warrant in writing to apprehend the offender. Arrest without warrant where a warrant is required, is not due process of law, and arbitrary or despotic power no man possesses under our system of government. 4 Bl. Comm., 292; 1 Chit. Crim. Law, 24; *Board of Trustees* v. *Schroeder*, 58 Ill., 353; *State* v. *James*, 78 N. C., 455.

It is true the court, in the instruction under consideration, told the jury that a police officer who exceeds his powers in making an arrest becomes a trespasser, and that a person may lawfully resist an illegal arrest. But what those powers in the present case were, the jury were not told—or, at least, they were not told in such a way as to enable them to understand them; for while, in the third instruction, they were told, in effect, that a police officer has no right to arrest a person without a warrant for a misdemeanor committed in his absence, yet the subsequent language of the instruction on the same point was misleading and erroneous, as we have seen; and the effect of what was said in the first part of the fourth instruction (above referred to) was practically destroyed by the accompanying declaration that the jury were the judges of

.whether the arrest in question was legal or not, which was equivalent to telling them that what had just been said was merely advisory, and not authoritative, and therefore that they were neither legally nor morally bound to regard it; just as, in the third instruction, they were virtually told that they were to decide whether the ordinances of the city were legal or not; which was a question not for the jury at all, but for the court exclusively—as much so as is a question relating to the constitutionality of a statute. So that the tendency of the instructions was to perplex and mislead the jury, instead of aiding them to a correct conclusion; and this undoubtedly was error, for which the judgment must be reversed.

As was said by Judge Richardson, speaking for the court, in *Honesty's case*, 81 Va., 283: "The accused has a right to a full and correct statement by the court of the law applicable to the evidence in his case, and any misdirection by the court, in point of law, on matters material to the issue, is ground for a new trial." And in a still more recent case it was said by the court, as in *Montague's case*, 10 Gratt., 767, it had been previously decided, that where any legal right has been denied to a party on trial for a criminal offense, or any of the safeguards thrown around him by law for his protection have been disregarded, as where an erroneous instruction is given or a correct one refused, it is not for this court to say what might or might not have been the effect upon the case of the accused; that the law will intend prejudice, if it be necessary to enable him to exercise his right to have the judgment of the court reviewed in the appellate tribunal, and will hold it impossible in such a case to say that a fair and impartial trial has been had. *Vaughan's case*, 85 Va., 671.

The case must, therefore, go back for a new trial; and as it must go back on account of the misdirection of the court, we express no opinion as to the weight of the evidence, nor would it be proper to do so. We will only add that we find no error in any of the instructions given by the court except those

above mentioned; and in view of what has been already said, we deem it unnecessary to consider, *seriatim,* the instructions offered by the prisoner and refused.

LACY J., dissented.

JUDGMENT REVERSED.