# Handley *v.* The State.

### Indictment for Murder.

1. *Homicide; Killing to prevent escape of person charged with misde-
meanor.*—The fact that the defendant in an indictment for murder,
while assisting an officer to arrest the deceased under a warrant
charging him with misdemeanor, shot the deceased for the purpose of
preventing his escape, constitutes no excuse, justification, or pallia-
tion for the taking of life, and does not reduce the offense to man-
slaughter.

2. *Charges misstating the evidence.*—On a trial for homicide, where
there is evidence that, shortly before the killing, defendant said that
he had killed or shot five men while guarding convicts, and that he
would have shot deceased the night before if deceased had put his
head outside the door, charges asserting that there is no evidence
that defendant "ever killed any other person," "ever shed any other
man's blood," or "liked to shed man's blood," are properly refused,
said declarations by the defendant having been admitted in evidence
without objection.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. LeRoy F. Box.

The appellant, James Handley, was convicted of murder
in the first degree, and appeals.

On the trial, as shown by the bill of exceptions, the State
introduced, evidence, which was not controverted, that
the defendant, in the latter part of January, 1889,
in Shelby county, shot Joseph Bowman with a pistol,
from which wound he died in a few minutes thereafter.
The State also introduced evidence tending to show that,
when the defendant came to where the deceased was sitting
or leaning against a stump, he leveled his pistol at the de-
ceased, saying, at the same time, "Surrender, and throw up
your hands;" to which the deceased replied, "I am not

[Handley v. The State.]

going to do it;" and, getting off the stump, started to run, when the defendant shot him. The defendant's evidence tended to show that he went with a deputy sheriff to arrest the deceased under a warrant charging him with beating his wife, and that, upon his coming to where the deceased was, the deceased got up as soon as he saw defendant, and saying, "There is one of the damned rascals who want to arrest me," came directly towards defendant, who told him to stop, but, upon deceased continuing to advance, and attempting to draw his knife, defendant fired and shot him.

Upon the introduction of all the evidence, the defendant requested the court to give, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (7.) "If the defendant was requested to aid the officers in executing the warrant of arrest, and was attempting to do so, and the deceased fled or started to run or escape from arrest, and the defendant shot the deceased to prevent his escape, the then defendant would be guilty of murder or manslaughter, according to the peculiar circumstances of the case; but it is not murder unless the killing was done in pursuance of a formed design to take the life of deceased." (8.) "If the defendant was requested or told by the deputy sheriff to aid or assist or help in arresting the deceased, and if he, in pursuance of such request, attempted to arrest the deceased, who thereupon fled, and the defendant shot him to prevent his escape, then you may look to this fact, under the law, to reduce the offense to manslaughter; and, unless the defendant shot in pursuance of a formed design to take the life of the deceased, he cannot be convicted of murder." (9.) "There is no evidence before the jury tending to show that the defendant ever killed any other person, or five other persons, and the jury must not consider any statement to that effect, made by the solicitor in argument." (10.) "There is no evidence in this case that the defendant ever shed any other man's blood, either negro or white; and the jury must disregard all statements on that subject, made by the solicitor in argument." (11.) "There is no evidence that the defendant liked to shed man's blood."

S. W. JOHN, and A. P. LONGSHORE, for appellant, cited 2 Bishop on Criminal Law, §§ 577,578; 1 Russell on Crimes, 544, 666, 667.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—On the facts hypothesized in charges 7 and 8, refused to the defendant, he was clearly guilty of murder. An officer charged with the duty of arresting a misdemeanant has no more authority to shoot him down to prevent an escape, than he would have the right to kill any indifferent person who was casually·walking or running away from the place where the officer happened to be; and of course a private person, who was lending aid in effecting the arrest at the request of the officer, as was the defendant here, according to one aspect of the evidence, would certainly have no more right than the officer himself. On the facts so postulated, the jury could not be justified in finding the defendant guilty of manslaughter only, as these charges would have authorized them to do; nor would they have been authorized to conclude that defendant did not entertain the formed design to kill, which is necessary in murder, since the law presumes such formed design from the facts that the defendant intentionally used a deadly weapon with a fatal result—and this, not in an exigency which justified or even palliated the act, but solely for the purpose of preventing the escape of a misdemeanant,—an end which the law does not admit of being subserved by the taking of life, and which constitutes no excuse, justification or palliation for the taking of life. Both these charges were, therefore, not only misleading and confusing in their tendencies, but affirmatively incorrect and unsound statements of the law; and each of them was properly refused.

There was evidence to the effect that, on the morning of the day of the homicide, when a witness and defendant were going to Calera to sue out the warrants for the arrest of the deceased, "defendant told witness that he had killed or shot five (5) men while he was guarding convicts for Mr. Jackson at Blount Springs in Blount county, Alabama; and also, that on the previous night, while defendant and witness were near the dwelling-house of deceased, if deceased had shown his head at the door, he, defendant, would have shot him." It is most clear to us that this was evidence tending in some degree to show that defendant had killed other persons than deceased, or five persons other than deceased, and that defendant had shed the blood of other men than that of deceased; and it was a fair inference to be drawn in argument, and by·the jury, from the facts which this evidence tended to establish, that defendant had shot five other men, and would have causelessly shot deceased through the window of his house,

[Lucas v. The State.]

had the opportunity to do so been presented; that "the defendant liked to shed man's blood." Charges 9, 10 and 11, which respectively asserted that there was no evidence that defendant "ever killed any other person," &c., &c., "ever shed any other man's blood," or "liked to shed man's blood," were therefore well refused. And it is of no consequence in this connection that the declarations of the defendant, as to shooting or killing five men at Blount Springs, might have been excluded from the jury as irrelevant testimony, had objection been made to it. No objection was made, and it was treated as competent evidence.

Counsel do not insist upon the exceptions reserved to the court's action in refusing to give several other charges requested by the defendant, and we will therefore not discuss those rulings. The instructions have, however, been carefully examined, and it will suffice to say that they are patently either affirmatively bad, or, when referred to the evidence, involve such tendencies to mislead the jury as to justify their refusal.

The judgment of the Circuit Court is affirmed.