### COX v. GILMER et al.

(Circuit Court, W. D. Virginia. April 30, 1898.)

1. FEDERAL JURISDICTION—FEDERAL QUESTIONS—PLEADING.
   In an action for false imprisonment, averments in the declaration that defendants, acting as judges of an election, caused plaintiff's arrest and imprisonment under color of a state law which is repugnant to the constitution of the United States, are not open to the objection of anticipating the defense for the purpose of showing that a federal question is involved. White v. Greenhow, 5 Sup. Ct. 923, 962, 114 U. S. 307, followed.

2. CONSTITUTIONAL LAW—DUE PROCESS.
   The Virginia statute authorizing the judges of election to order the arrest and confinement, for not exceeding 24 hours, of any person who, after being ordered to desist, persists in interfering with, coercing, or intimidating voters at the polls (Act March 5, 1890), is not void for want of due process of law.

This was an action by Lewis W. Cox against J. Frank Gilmer, Samuel McCue, and Percy F. Payne to recover damages for false imprisonment. The case was heard on demurrer to the declaration for want of federal jurisdiction.

John E. Roller and Turner A. Hackman, for plaintiff.
Sipe & Harris and Geo. W. Morris, for defendants.

PAUL, District Judge. This is an action of trespass brought by the plaintiff against the defendants to recover damages for false and malicious imprisonment. The plaintiff and the defendants are all citizens of the state of Virginia. Omitting the names of the plaintiff and the defendants. the declaration is as follows:

"That the said defendants contriving and maliciously intending to injure the said plaintiff in his good name, fame, and credit, and to bring him into public scandal, infamy, and disgrace, and to cause the said plaintiff to be imprisoned for a long space of time, and thereby to impoverish, oppress, and wholly ruin him, heretofore, to wit, on the 3d day of November, 1896, in the Western district of Virginia aforesaid, the said defendant J. Frank Gilmer appeared before J. W. Christmas, J. F. Burnley, and W. Irving, then and there being judges of election at an election then being held on that day, and then and there, before the said judges, falsely and maliciously, and without any reason or probable cause whatever, charged the said plaintiff with intimidating, coercing, hindering, and tampering with the voters at one of the precincts at which was then being held an election under the laws of the state of Virginia and of the United States, which precinct is known as the 'Second Ward Precinct of the City of Charlottesville,' after he had been ordered by a majority of the judges of election to desist, and had refused so to do,

and upon such charge, falsely and maliciously, and without any reasonable or probable cause whatever, caused and procured the said judges of election to make and grant, in accordance with the provisions of the act of the general assembly of Virginia approved March 5, 1890, entitled 'An act in relation to the preservation of order at the polls,' a certain paper, signed by the said judges, in the words and figures following, to wit:

"'The Commonwealth of Virginia, City of Charlottesville, to wit:

"'To Percy F. Payne, Special Constable of Said City: It appearing to the judges of election, or a majority of them, at 2d ward precinct in said city, that voters are being intimidated or coerced, and are being hindered and tampered with, so as to be prevented from casting a secret ballot, and that L. W. Cox are engaged in so intimidating, coercing, hindering, and tampering with the voters, and that they have been ordered by the said judges of election, or a majority of them, to desist, and have refused so to do: These are therefore, in the name of the commonwealth of Virginia, to command you forthwith to apprehend and bring before the said judges of election at the above precinct the said L. W. Cox, to be examined touching the above offense, and to be further dealt with according to law. Given under our hands this 3d day of November, A. D. 1896.       J. W. Christmas,
                                                   "'J. F. Burnley,
                                                   "'W. Irving,
                                                   "'Judges of Election.'

"—For the apprehending and taking of the said plaintiff, and for bringing the said plaintiff before the said judges of election to be dealt with in accordance with said law; and the said defendant J. Frank Gilmer, under and by virtue of said warrant, afterwards, to wit, on the day and year aforesaid, wrongfully, unjustly, and without any reasonable cause whatever, caused the said plaintiff to be arrested by his body by the defendant Percy F. Payne, and to be carried in custody before the defendant J. Samuel McCue, styling himself mayor of the city of Charlottesville, in the said Western district of Virginia, to be examined before him touching the supposed crime; and the defendant J. Samuel McCue, as aforesaid, having heard and considered what the said defendant J. Frank Gilmer could say, allege, or prove against the said plaintiff touching the supposed offense, then and there, to wit, on the day and year last aforesaid, in the district aforesaid, adjudged and determined that the said plaintiff should be conveyed and delivered to the custody of the keeper of the jail of the said city of Charlottesville; the mittimus signed by the said J. Samuel McCue being in the words and figures following, to wit:

"'Mittimus.

"'City of Charlottesville: To the Chief of Police of the City of Charlottesville, and to the Keeper of the Jail of said City: These are to command you, the said chief of police, in the name of the commonwealth of Virginia forthwith to convey and deliver into the custody of the keeper of the jail, together with this warrant, the body of L. W. Cox, charged before me, J. Samuel McCue, mayor of Charlottesville, Virginia, on the oath of J. W. Christmas, with a misdemeanor by him committed, in this, that the said L. W. Cox on the third day of November 1896 in said city did engage in so intimidating, coercing, hindering, and tampering with the electors, the said L. W. Cox was found guilty as charged and adjudged to pay a fine and costs amounting to $——, is sent to jail, in this payment the accused has defaulted, and you, the keeper of the said jail, are hereby required to receive the said L. W. Cox into your jail and custody and there safely keep him until he shall thence be delivered in due course of law. Given under my hand and seal this 3 day of November 1896.                J. Samuel McCue,
                                        "'Mayor of Charlottesville. [Seal.]'

"—And the said J. Samuel McCue refused to hear the cause upon the merits, or to allow the plaintiff to give bail to appear and defend the said charge when the same should be called against him; and thereupon the said defendant Percy F. Payne, calling himself a special constable under the laws of the state of Virginia, delivered the said plaintiff to the keeper of the said jail, by whom, under the said mittimus, he was kept and detained in prison

for a long space of time, to wit, for the space of 30 hours, then next following, at the expiration of which time the said plaintiff was fully acquitted and duly discharged for said offense. That the said defendants committed the trespass against the said plaintiff hereinbefore complained of under color of the authority of the act of the general assembly of Virginia, approved March 5, 1890, which is in the words and figures following, to wit: 'Be it enacted by the general assembly of Virginia, that the judges of election, if it shall appear that the voters are being intimidated or coerced from any source in the exercise of their suffrage by bystanders about the polling place, or that voters are being hindered or tampered with in any way so as to prevent the casting of a secret ballot, may order such person, or persons, so engaged in intimidating, coercing, or tampering with voters, to cease such action, and if such person, or persons, so engaged do not forthwith desist, the judges of election, or a majority of them, may order the arrest of such person, or persons, by a constable, or any other person authorized by law to make such arrest, and confine him, or them, in the county, or city, jail, as the case may be, not exceeding 24 hours, and such person, or persons, may be summoned by due process of law before the next term of the county, or corporation, court having jurisdiction, as the case may be, and upon the production of evidence proving his, or her, guilt, shall be fined in a sum not less than one hundred dollars nor more than five hundred dollars,'--which act is repugnant to the constitution of the United States and invalid for the following reasons, to wit: In that it deprives a person of his liberty without due process of law; punishes a citizen without a trial, without a proper warrant for his arrest, and without a trial by jury. By means of which said several premises the said plaintiff has been and is greatly injured in his said credit and reputation, and brought into public scandal, infamy, and disgrace with and among all his neighbors and all other good and worthy citizens of this United States, and divers of these neighbors and citizens, to whom his innocence in the premises was unknown, have by reason of the premises suspected and believed, and still do suspect and believe, that the said plaintiff hath been and is guilty of a heinous offense against the laws of the land; and also by reason of the premises the said plaintiff hath suffered great anxiety and pain of body and mind, and hath been obliged to lay out and expend divers sums of money, in the whole amounting to a large sum, to wit, the sum of $100, in and about the procuring of his discharge from said imprisonment, and in defending himself in the premises, and the manifestation of his innocence in that behalf, and hath been greatly hindered by reason of the premises from following and transacting his lawful and necessary affairs and business for a long time, to wit, for the space of ——, and also by reason and means of the said premises hath been and is greatly injured and damnified in his credit and circumstances, to the damage of the said plaintiff five thousand dollars; and therefore he brings his suit."

The defendants demur to the declaration, and move the court to dismiss the case on the ground that this court has no jurisdiction of the same; the plaintiff and the defendants being citizens of the same state. The plaintiff contends that, though the parties are all citizens of Virginia, yet this court has jurisdiction of this action, because a federal question is involved. The federal question, as alleged in the declaration, is that the Virginia statute under color of which the defendants acted in securing the arrest and imprisonment of the plaintiff is in violation of the fourteenth amendment to the constitution of the United States. The clause of the fourteenth amendment which it is alleged the Virginia statute of March 5, 1890, violates, is the second clause of section 1, which is as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The declaration, after stating at length the plaintiff's cause of action, which is an action for false and illegal imprisonment, alleges "that the said defendants committed the trespass against the said plaintiff hereinbefore complained of under color of the authority of an act of the general assembly of Virginia approved March 5, 1890;" and recites the same. The declaration continues:

"Which act is repugnant to the constitution of the United States and invalid for the following reasons, to wit: In that it deprives a person of his liberty without due process of law, punishes a citizen without a trial, without a proper warrant for his arrest, and without a trial by jury."

The first ground of demurrer urged by the defendants is that the plaintiff, after stating his cause of action, goes further, and anticipates the defense that will be relied on by the defendants,—that is, that they were proceeding under the act of the general assembly of Virginia of March 5, 1890; that the plaintiff thus attempts to confer jurisdiction on this court by alleging that the defense which will be relied on involves a federal question. Counsel for defendants, in support of this position, cite, as a leading case, Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654. This was a suit brought by the state of Tennessee against the Union & Planters' Bank to recover taxes assessed by the state on the capital stock of the bank, and on shares of stock held by the stockholders of said bank; and in the bill it was alleged that the bank claimed exemption from such taxation under its charter, and that the act assessing it with taxes was in violation of the constitution of the United States, in that it impaired the obligation of a contract,—the charter of the bank exempting it from the payment of the taxes so assessed In that case the supreme court held, as it had previously done in Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173:

"Where, however, the original jurisdiction of a circuit court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of a federal nature, it must appear at the outset, from the declaration or the bill of the party suing, that the suit is of that character; in other words, it must appear in that class of cases that the suit was one of which the circuit court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon its own inspection of the pleadings, must dismiss the suit, just as it would remand to the state court a suit which the record, at the time of removal, failed to show was within the jurisdiction of the circuit court. It cannot retain it in order to see whether the defendant may not raise some question of a federal nature, upon which the right of recovery will finally depend; and, if so retained, the want of jurisdiction at the commencement of the suit is not cured by an answer or plea which may suggest a question of that kind."

The same doctrine is held in Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35.

In Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, the supreme court held that:

"Under the acts of March 3, 1887, c. 373 (24 Stat. 552), and August 13, 1888, c. 866 (25 Stat. 433), a case (not depending on the citizenship of the parties, nor otherwise specially provided for) cannot be removed from a state court into the circuit court of the United States, as one arising under the constitution, laws, or treaties of the United States, unless that appears by the plaintiff's statement of his own claim, and that, if it does not so appear, the want

cannot be supplied by any statement in the petition for removal or in the subsequent pleadings."

In accordance with this decision are the cases of Land Co. v. Brown, 155 U. S. 488, 15 Sup. Ct. 357; Postal Tel. Cable Co. v. State of Alabama, 155 U. S. 482, 15 Sup. Ct. 192; Railroad Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869; Kansas v. Atchison, T. & S. F. Ry. Co., 77 Fed. 339.

But it is contended for the plaintiff that the statement of his cause of action does not bring his case within the doctrine established by these decisions; that in the statement of his case he does not anticipate the defense that will be relied on by the defendants for the purpose of raising a federal question, so as to give this court jurisdiction. Counsel for the plaintiff insist that this case is covered by the decision of the supreme court in White v. Greenhow, 114 U. S. 307, 5 Sup. Ct. 923, 962. In that case both the plaintiff and the defendant were citizens of the state of Virginia. It was an action brought in the circuit court for the Eastern district of Virginia by a tax payer who had tendered to the tax collector, in payment of his taxes, coupons cut from the bonds of the state, which coupons were by an act of the general assembly of Virginia of March 30, 1871, receivable in payment of taxes by virtue of a contract with the state of Virginia. The declaration alleged that the defendant refused to receive the said coupons, under color of the authority of the act of the general assembly of the state of Virginia passed January 26. 1882, which forbade him to receive the same; that the defendant, after refusal of said tender, forcibly and unlawfully entered on the premises of the plaintiff, and levied upon and seized and carried away the personal property of the plaintiff, in order to sell the same for the satisfaction of said taxes, which he claimed to be unpaid and delinquent; that the acts of the general assembly of Virginia specified in the pleadings, which require the tax collector to refuse to receive such coupons in payment of taxes, and to proceed with the collection of taxes for the payment of which they have been tendered, as if they were delinquent, impair the obligation of the said contract between the state of Virginia and the plaintiff. The declaration was demurred to, and the demurrer was sustained by the circuit court, but overruled by the supreme court, the supreme court saying:

"The present action, as shown on the face of the declaration, was a case arising under the constitution of the United States, and was one, therefore, of which the circuit court had rightful jurisdiction."

In that case the cause of action was the seizure of the plaintiff's property under color of an act of the general assembly of Virginia which impaired the obligation of a contract, and was in violation of the constitution of the United States. In the case at bar the cause of action alleged is the arrest and imprisonment of the plaintiff by the defendants under color of an act of the general assembly of Virginia, which it is asserted "is repugnant to the constitution of the United States and invalid, in this, to wit: that it deprives a person of his liberty without due process of law, punishes a citizen with

out a trial, without a proper warrant for his arrest, and without a trial by jury." The court is unable to draw any distinction between the averments in the declaration in White v. Greenhow, supra, and the averments in the declaration in the case we are now considering. In each case the injuries complained of are alleged to be the direct result of the operation of a legislative act that is repugnant to the constitution of the United States. The plaintiff in this case does not, as contended by counsel for the defendants, allege or suggest that the defendants will set up by way of defense a claim that they acted under the constitution or laws of the United States, in order to raise a federal question, of which this court would have jurisdiction. The doctrine established by the decisions in Tennessee v. Union & Planters' Bank, and in the other cases cited supra, is not applicable here. If the act of the general assembly of Virginia approved March 5, 1890, is in violation of the constitution of the United States, the cause of action is properly stated by the averments in the declaration, and these would be sufficient to give this court jurisdiction.

This conclusion requires an examination of the question whether the act of the general assembly of Virginia approved March 5, 1890, is antagonistic to the constitution of the United States. The particulars wherein it is alleged in the declaration that the act in question is repugnant to the constitution of the United States are, "It deprives a person of his liberty without due process of law; punishes a citizen without a trial, without a proper warrant for his arrest, and without a trial by jury." The court, in discussing this act of the Virginia legislature, will necessarily confine itself to the question of its constitutionality. It has no concern with the facts connected with the arrest and imprisonment of the plaintiff. The power conferred by the statute may or may not have been abused in this instance by the officials acting under it. They may have exceeded the power conferred by the statute, and applied it to acts of the plaintiff which were not comprehended by its provisions. Wrongful acts by an official cannot affect the validity of the law under which the proceedings are taken.

The clause of the fourteenth amendment which counsel for the plaintiff insist is violated by the act in question, and to which the argument for the plaintiff is confined, is as follows:

"Nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

In Walker v. Sauvinet, 92 U. S. 90, the supreme court says:

"Due process of law is process due according to the law of the land. This process, in the states, is regulated by the law of the states. Our power over that law is only to determine whether it is in conflict with the supreme law of the land; that is to say, with the constitution, and laws of the United States made in pursuance thereof, or with any treaty made under authority of the United States. Article 6, Const."

The fifth amendment to the constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law." In Hurtado v. People of California, 110 U. S. 516, 4 Sup.

Ct. 111, 292, Mr. Justice Matthews, referring to the provision of the fifth amendment, says:

" 'Due process of law,' in the latter [fifth amendment], refers to that law of the land which derives its authority from the legislative powers conferred upon congress by the constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law. In the fourteenth amendment, by parity of reason, it refers to that law of the land, in each state, which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws and alter them at their pleasure."

In accordance with the doctrine stated in the foregoing cases, it was held in Hurtado v. California, supra (syllabus):

"That a conviction upon such an information for murder in the first degree, and a sentence of death thereon, are not illegal by virtue of that clause of the fourteenth amendment to the constitution of the United States which prohibits the states from depriving any person of life, liberty, or property without due process of law."

In Walker v. Sauvinet, supra, it was held that a state statute dispensing with a trial by jury in a case at common law is not in violation of the fourteenth amendment to the constitution; and this notwithstanding that by article 7 of the amendments it is provided that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

In Miller v. State of Texas, 153 U. S. 535, 14 Sup. Ct. 874, which was a case brought up on a writ of error from the criminal court of appeals for the state of Texas, the supreme court used this language:

"In his motion for a rehearing, however, defendant claimed that the law of the state of Texas forbidding the carrying of weapons, and authorizing the arrest without warrant of any person violating such law, under which certain questions arose upon the trial of the case, was in conflict with the second and fourth amendments to the constitution of the United States, one of which provides that the right of the people to keep and bear arms shall not be infringed, and the other of which protects the people against unreasonable searches and seizures. We have examined the record in vain, however, to find where the defendant was denied the benefit of any of these provisions; and, even if he were, it is well settled that the restrictions of these amendments operate only upon the federal power, and have no reference whatever to proceedings in state courts;" citing Barron v. Mayor, etc., of Baltimore, 7 Pet. 243 (a leading case), and other decisions.

"Officers who, by virtue of their offices, are conservators of the peace, have, at common law, the right to arrest without warrant all persons who are guilty of a breach of the peace, or other violation of criminal law, in their presence." Davis', Cr. Law, 402; Muscoe v. Com., 86 Va. 443, 10 S. E. 534; 2 Am. & Eng. Enc. Law (2d Ed.) 881; Carico v. Wilmore, 51 Fed. 196. The judges of election in Virginia are by the act of 5th March, 1890, made conservators of the peace for the purpose of preserving order at elections, as they were, and still are, by the provisions of section 144 of the Code of 1887. The act complained of is a general law, applicable alike to all citizens of the commonwealth. The particulars wherein it is claimed that it deprives a person of his liberty without due process of law are:

1. That it punishes a citizen without a trial. The act does not confer upon the judges of election the power to inflict punishment. It confers upon the judges of election the authority, where a person is, in their judgment, violating the provisions of the statute, after he has been ordered to cease such action, and he refuses to desist, to order his arrest, and to commit him for a time not exceeding 24 hours. The act further provides that such person may, by due process of law, be summoned before the next term of the county or corporation court having jurisdiction, and on proof of his guilt he may be fined as the act provides. This is the trial provided by the act, and the constitution of the state of Virginia guaranties him a trial by jury.

2. As to the objection to the statute that it deprives a person of his liberty without a proper warrant for his arrest, we have seen, from the case of Miller v. State of Texas, supra, that a state statute which provides that a person may be arrested on a criminal charge without a warrant is not antagonistic to the constitution of the United States. The act of March 5, 1890, passed by the Virginia legislature, contains no such provision. As a matter of fact, a warrant of arrest was issued in this case. The act of the Virginia legislature of March 5, 1890, empowers the judges of election, under certain conditions, to order an arrest; and, whether we construe the statute as authorizing the arrest with or without a warrant, it does not, in view of the authorities cited, present a federal question which confers jurisdiction on this court. This disposes of all the grounds upon which its jurisdiction is invoked. None of them are tenable. The demurrer will be sustained.